UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LOUIS THORNTON,

       Petitioner,

v.                                        Case No. 3:17-cv-64-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Louis Thornton, an inmate of the Florida penal system, initiated this action on December 16, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Thornton challenges a 2011 state court (Duval County, Florida) judgment of conviction for aggravated battery and possession of a firearm by a convicted felon. Thornton raises eight grounds for relief. See Petition at 7-23.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 28) with exhibits (Resp. Ex.). Thornton did not file a reply brief.[3] This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

[3] Thornton filed a motion for extension of time to file a reply (Doc. 30), which the Court granted (Doc. 31), but he ultimately failed to file a reply.

## II. Relevant Procedural History

On February 24, 2010, the State of Florida (State) charged Thornton by way of Information with aggravated battery with a deadly weapon (count one), aggravated assault (count two), and possession of a firearm by a convicted felon (count three). Resp. Ex. A at 13-14. Thornton proceeded to a jury trial, with the jury first deciding Thornton's guilt or innocence as to counts one and two and then returning to deliberate over count three. At the conclusion of the trial, the jury found him guilty as to counts one and three but not guilty as to count two. Id. at 115-18. As to count one, the jury found that Thornton used a deadly weapon during the commission of the offense. Id. at 115. As to count three, however, the jury found that although Thornton legally possessed a firearm, he did not actually possess a firearm during the commission of the offense. Id. at 118. On May 3, 2011, the circuit court adjudicated Thornton to be a habitual felony offender (HFO) and sentenced him to a term of incarceration of sixteen years in prison as to both counts one and three, with each count running concurrently. Id. at 139-45.

Thornton appealed his conviction and sentence to Florida's First District Court of Appeal (First DCA). Id. at 150-51. On December 5, 2011, Thornton, with the assistance of counsel, filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), in which he challenged his adjudication as a HFO. Resp. Ex. D at 1-15. The circuit court failed to rule on the motion. Resp. Ex. E. Thornton then filed an initial brief with the First DCA in which he argued that (1) the circuit court erred in failing to instruct the jury on the standard for constructive possession of a firearm in jointly occupied premises and (2) his HFO adjudication was illegal. Resp. Ex. F. The State filed an answer brief. Resp. Ex. G. On January 22, 2013, the First DCA per curiam affirmed

Thornton's conviction and sentence without a written opinion, Resp. Ex. H, and issued the Mandate on February 7, 2013. Resp. Ex. I.

On May 7, 2013, Thornton filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. J at 1-18. In the Rule 3.850 Motion, Thornton alleged his counsel was ineffective for failing to: (1) present evidence; (2) investigate a potential witness; (3) object to a jury instruction; (4) impeach the victim's testimony; (5) impeach a state witness; (6) object to his adjudication as an HFO; and (7) request a jury instruction. Id. at 2-17. On September 14, 2015, the circuit court denied the motion. Id. at 31-46. On January 29, 2016, the First DCA per curiam affirmed the denial without a written opinion, Resp. Ex. M, and issued the Mandate on February 24, 2016. Resp. Ex. N.

On February 22, 2016, Thornton petitioned the Florida Supreme Court to invoke its discretionary jurisdiction to review the denial of his Rule 3.850 Motion. Resp. Ex. O. The Florida Supreme Court dismissed the petition for lack of jurisdiction. Resp. Ex. P. Thornton again attempted to get the Florida Supreme Court to review the denial of his Rule 3.850 Motion by filing a petition for writ of habeas corpus in that court on April 1, 2016. Resp. Ex. Q. On May 19, 2016, the Florida Supreme Court entered an order treating the petition for writ of habeas corpus as a petition for writ of mandamus and transferring it to the First DCA. Resp. Ex. R. On June 8, 2016, the First DCA per curiam denied the petition without a written opinion. Resp. Ex. S.

On February 12, 2016, Thornton filed a petition for writ of habeas corpus with the circuit court, in which he argued the evidence presented at his trial did not support his

convictions. Resp. Ex. T. At the time Respondents filed their Response the circuit court had yet to rule on the petition. Resp. Ex. U.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Thornton's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga.</u>

Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first

instance.'"[4] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1103 (2017).

the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.

> See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546;
> Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's
> invocation of a procedural rule to deny a prisoner's claims
> precludes federal review of the claims if, among other
> requisites, the state procedural rule is a nonfederal ground
> adequate to support the judgment and the rule is firmly
> established and consistently followed. See, e.g., Walker v.
> Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179
> L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct.
> 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring
> procedurally defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman, 501
> U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be

excused under certain circumstances. Notwithstanding that a claim has been procedurally

defaulted, a federal court may still consider the claim if a state habeas petitioner can show

either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage

of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to

establish cause,

> the procedural default "must result from some objective factor
> external to the defense that prevented [him] from raising the
> claim and which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.
> 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7]
> Under the prejudice prong, [a petitioner] must show that "the
> errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness." Id. at
> 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).
[7] Murray v. Carrier, 477 U.S. 478 (1986).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Thornton alleges that the circuit court fundamentally erred when it failed to instruct the jury regarding constructive possession of a firearm in a jointly occupied premises. Petition at 7-8. According to Thornton, his possession of the firearm was disputed at trial

and the evidence established that the premises in which the firearm was discovered was jointly occupied between he and Nikki Freeman. Id. at 7. However, the circuit court gave an incomplete jury instruction because it failed to explain what the State was required to prove when joint occupancy was an issue. Id. Thornton avers that the State did not present independent proof establishing he knew of the firearm's presence or that he had the ability to control it. Id. at 8.

Respondents contend this claim is not cognizable in federal habeas proceedings because Thornton did not raise a federal constitutional issue; instead, this issue is a matter solely of state law. Response at 21-23. "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). The Eleventh Circuit has "held that errors in state jury instructions are federal constitutional issues only where they render the entire trial fundamentally unfair." Erickson v. Sec'y, Dept. of Corr., 243 F. App'x 524, 528 (11th Cir. 2007) (citing Jones v. Dugger, 888 F.2d 1340, 1343 (11th Cir. 1989)); see also Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72) ("[u]nlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'").

Thornton first raised this issue in state court on direct appeal as a claim of fundamental error. Resp. Ex. F at 12-17. He did not raise any federal due process issue nor did he otherwise rely on federal constitutional law. Id. (citing Moton v. State, 8 So. 3d 483 (Fla. 1st DCA 2009); Wagner v. State, 950 So. 2d 511 (Fla. 2d DCA 2007); Mitchell

v. State, 958 So. 2d 496 (Fla. 4th DCA 2007); and <u>Brickley v. State</u>, 12 So. 3d 311 (Fla. 4th DCA 2009)). Likewise, here, Thornton does not argue that his due process rights were violated, nor does he allege any federal constitutional violation. Therefore, Thornton's claim is entirely a matter of state law and is not cognizable in federal habeas proceedings. <u>See</u> <u>Estelle</u>, 502 U.S. at 71-72; <u>Erickson</u>, 243 F. App'x at 528.

Even if Thornton had framed this issue as a federal due process issue, he would not be entitled to relief. Under Florida law, "[w]hen the 'premises where contraband is found is in joint, rather than exclusive, possession of a defendant . . . knowledge of the contraband's presence and the ability to control it will not be inferred from the ownership but must be established by independent proof.'" <u>Kemp v. State</u>, 166 So. 3d 213, 217 (Fla. 1st DCA 2015) (quoting <u>Julian v. State</u>, 545 So. 2d 347, 348 (Fla. 1st DCA 1989)). Here, the record reflects that the victim, Kenneth Benn, and his girlfriend, Nicole Lester, went to Thornton and his girlfriend, Nikki Freeman's, apartment to confront Freeman about her failure to pay back a $1,000 loan Lester had given to her a month prior to the incident. Resp. Ex. B at 28-30, 131-34. According to Benn and Lester, Thornton opened the door and either immediately or a short while thereafter pointed a gun at Benn's head. <u>Id.</u> at 31-32, 134, 163-67. Thornton eventually exchanged the gun for a knife, which Freeman had given him, and cut Benn on the head, which resulted in a wound requiring eight staples to close. <u>Id.</u> at 33-34, 121-22, 135. Notably, Lester testified at trial that Freeman had recently moved into that apartment about a week and half before the incident and Thornton was always there. <u>Id.</u> 140-41. According to Lester, it was evident to her that Thornton lived there as well. <u>Id.</u> When police arrived, Freeman told Officer Lisa Coyle that there was a firearm in the closet of the master bedroom inside a box. <u>Id.</u> at 56, 58. When

police searched the residence, Officer William Whittlesey found an unloaded .32 caliber semiautomatic pistol. Id. at 80-81. When asked where he recovered the pistol, Whittlesey testified that "[i]t was on the side, kind of like the floor on the side of the bed." Id. at 81. The prosecutor asked Whittlesey if he "also move[d] the bed a little bit to find the firearm?", and he answered "[y]es, we did" while identifying the location in a photograph. Id. 81-82. Whittlesey also found an empty magazine on a shelf in the closet. Id. at 82-83.

The jury was first tasked with determining Thornton's guilt as to counts one and two. Id. at 342-43. After the jury returned its verdict of guilty as to count one but not guilty as to count two, the circuit court informed the jury that it was to determine Thornton's guilt as to count three. Id. The parties did not introduce additional evidence or make further arguments. Id. at 343. Instead, the circuit court read instructions to the jury concerning the law as it applied to count three. Id. at 343-48. Those instructions read, in part, as follows:

> To prove the crime of Possession of a Firearm by a Convicted Felon, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. LOUIS CHRISTOPHER THORNTON had been previously convicted of a felony.
>
> 2. After the conviction, LOUIS CHRISTOPHER THORNTON knowingly had in his care, custody, possession, or control, a firearm.
>
> . . . .
>
> To "posses" means to have personal charge of or exercise the right of ownership, management, or control over the thing possessed.
>
> Possession may be actual or constructive.

To "actually possess" a firearm means that the defendant

(a)     carried a firearm on his person; or

(b)     had a firearm within immediate physical reach with ready access with the intent to use the firearm during the commission of the crime; or

(c)     the firearm is so close as to be within ready reach and is under the control of the person.

Mere proximity to an object is not sufficient to establish control over the object when the object is not in a place over which the person has control.

Constructive possession means the object is in a place over which defendant has control, or in which defendant has concealed it.

If an object is in a place over which defendant does not have control, the State establishes constructive possession if it proves that defendant (1) has knowledge that the object was within defendant's presence, and (2) has control over the object.

If a person has exclusive possession of an object, knowledge of its presence may be inferred or assumed.

If a person does not have exclusive possession of an object, knowledge of its presence may not be inferred or assumed.

Resp. Ex. A at 113-14 (emphasis added). This last portion of the quoted instruction, while not directly addressing joint occupancy, does, however, task the jury with determining Thornton's knowledge of the firearm by means other than inference or assumption if they determine he did not have exclusive possession. Notably, the standard jury instructions did not include a provision regarding joint occupancy. Fla. Std. Jury Instr. (Crim.) 10.15.

The Court notes that Thornton relies heavily on the fact that the jury ultimately determined he was innocent as to count two and did not actually possess a firearm as to count three. These conclusions, Thornton argues, demonstrate that he did not have exclusive possession, thus, requiring the jury to determine the knowledge element by means other than inference or assumption. However, Thornton's reliance on the verdicts to demonstrate fundamental error is misplaced. The verdict as to count two included a special interrogatory where the jury could choose if Thornton actually possessed a firearm or did not, and also included an interrogatory for the lesser-included offense of assault. Resp. Ex. A at 116. The jury ultimately decided Thornton did not even commit an assault. Thornton asserts that this demonstrates that the jury did not believe Benn and Lester's testimony about Thornton possessing a gun. However, this is not necessarily the only conclusion the jury could have reached, as they could have determined the State failed to prove any one single element of assault, without ever getting to the firearm element. For example, the jury could have concluded Thornton's use of a firearm at his own door was not an intentional or unlawful threat to do violence against Benn but self-defense. Regardless of the jury's actual thinking, the verdict as to count two did not negate Benn and Lester's trial testimony as evidence for the jury to consider as to count three. Likewise, the not guilty verdict on count two does not negate the evidence of Thornton living in the home where police recovered the firearm. Therefore, Thornton's reliance on the verdict for count two does not support his argument that no evidence was presented to support a finding of constructive possession. Thus, the Court does not find any due process violation occurred by the circuit court's failure to read the instructions Thornton advances in his Petition.

Moreover, even if the circuit court had instructed the jury as Thornton alleges it should have, the record does not support a conclusion that the outcome of the trial would have been different and, therefore, no due process violation occurred. The evidence reflects that Thornton lived with his girlfriend, Freeman, and that a firearm was found on the floor on the side of the bed in their shared bedroom. Accordingly, there was evidence to infer Thornton had knowledge of the firearm. See Mitchell v. State, 958 So. 2d 496, 500 (Fla. 4th DCA 2007) (noting that "[w]here joint possession of the premises is shown, the knowledge element may be met by contraband in plain view in the common areas of the premises."). The firearm was found in a place over which Thornton had control, their shared bed in their shared bedroom. As to control, a DNA analysis of the firearm determined that a mixture was found on the firearm of at least two individuals including at least one female contributor and one male contributor. Resp. Ex. B at 213-15. Due to the limited DNA on the firearm, the analyst could neither include nor exclude Thornton as a contributor. Id. Notably, there was no evidence that anyone other than Freeman and Thornton handled the firearm. Although Thornton could not be excluded, the jury was free to infer from this evidence that Thornton handled the weapon because the gun was found in Thornton's shared bedroom with Freeman, which would support an inference that Freeman was the female contributor and he was the male contributor. The Court notes that "the dominion and control element may be met where the defendant has the ability [to] exercise control over the premises where the contraband is found." Duncan v. State, 986 So. 2d 653, 655 (Fla. 4th DCA 2008). The evidence presented at trial showed that Thornton had the ability to exercise control over the premises where he was the one that opened the door for Benn and Lester. Resp. Ex. B at 31, 133-34. As such, even if this

instruction were read, a jury could properly have concluded he constructively possessed the firearm. When viewed in the context of both the entire charge and the trial record, it cannot be said this instruction infected the entire trial to the point that the resulting conviction violated due process. See Jamerson, 410 F.3d at 688. For the foregoing reasons, the relief Thornton seeks in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Thornton avers that his trial counsel was ineffective for failing to present evidence that Benn cut himself when he broke the window in Thornton's car. Petition at 10-11. According to Thornton, Benn broke the window of the car and cut himself but lied to police about it; instead saying Thornton cut him so he could avoid criminal prosecution for damaging the car. Id. Thornton contends that his counsel should have introduced a redacted video-recorded statement in which Thornton told police Benn cut himself by breaking the window. Id. He further asserts that counsel should have cross-examined Benn and Lester on this issue and, although counsel introduced a photo of a car with a broken window, counsel should have introduced evidence that the car belonged to Thornton. Id.

Thornton raised a similar claim as ground one of his Rule 3.850 Motion. Resp. Ex. J at 2-5. The circuit court denied the claim, explaining:

> This Court finds the record refutes Defendant's contentions. First, counsel argued during opening arguments that the victims committed property damage against Defendant. Second, and most importantly, the record shows evidence was presented regarding the damaged vehicle and that Mr. Benn could have caused the damage. Mr. Benn testified during trial, during both direct and cross-examination, that Defendant accused him of busting the window out of Defendant's vehicle. Counsel elicited from Officer Carl Kahre of the Jacksonville Sheriff's Office ("JSO"), a responding

officer, that when he arrived at the crime scene, he noticed a vehicle with a broken window. Counsel further elicited from Officer Dwayne Gray of JSO that, when he arrived at the crime scene, he saw a damaged vehicle located in close proximity to the crime scene. During cross-examination of Officer Wes Stevenson of JSO, counsel asked the officer if the victim could have busted the window of Defendant's vehicle, although the victim was not arrested for it; the Officer indicated the victim could have busted the window out.

Assuming *arguendo* counsel should have presented further evidence to advance the theory suggested by Defendant, that Mr. Benn cut his own forehead and head while busting the window out of Defendant's vehicle, this Court finds Defendant has failed to demonstrate such evidence would have changed the outcome of his trial. Indeed, the record shows the State presented overwhelming evidence against Defendant showing he cut Mr. Benn during an argument over $1,000. Further, Officer Gray testified during trial he responded to the crime scene and made contact with the victim, Mr. Benn. Officer Gray described the stab wounds the victim suffered and opined that, in his training, knowledge, and experience as a police officer, the injuries were consistent with having been caused by a knife. Officer Stevenson testified he was on crime walk patrol in the apartment complex where the incident occurred when the police radio called for assistance about a stabbing at the complex. Officer Stevenson testified about the vehicle with the rear window busted out, and he opined the evidence at the scene, including the victim's injuries, did not indicate the victim had cut his head on the rear window of the vehicle.

Dr. Deborah Swartz testified she treated Mr. Benn for his scalp laceration at the Emergency Room at Baptist Hospital. She noted Mr. Benn told his nurse the injury was caused by a knife; Dr. Swartz opined the injury was a cut from some type of sharp object, and it was likely not caused by a minor car accident. Finally, Ms. Shana Mills, a forensic biologist and DNA analyst, tested the swabs taken from the blade of the knife recovered from the crime scene; she obtained a single source profile matching the DNA profile of Mr. Benn. Further, Ms. Mills testified, as to the handle of the knife, she obtained alleles that are in common with Defendant's DNA. Therefore, this Court finds counsel was not deficient for failing to set forth the evidence and/or theory now advanced by Defendant, because the evidence contradicts it

and it would not have prevailed. Because Defendant has
failed to meet his burdens under <u>Strickland</u>, Ground One is
denied.

<u>Id.</u> at 33-35 (record citations omitted). The First DCA per curiam affirmed the denial of

this claim without a written opinion. Resp. Exs. M; N.

To the extent that the First DCA decided the claim on the merits,[8] the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Thornton is not entitled to

relief on the basis of this claim.

Even if the state appellate court's adjudication of the claim is not entitled to

deference, the claim in Ground Two is meritless because he cannot demonstrate

prejudice. As noted by the circuit court, a DNA analysis of the knife Benn and Lester

accused Thornton of using demonstrated that Benn's DNA was on the blade of the knife

and, although the analyst could not include or exclude Thornton as a contributor to the

DNA  profile on the handle of the knife, she noted that there were several alleles in

common with Thornton's DNA. Resp. Ex. B at 211, 213-15. In light of the presence of

Benn's DNA on the blade of the knife, there is no reasonable probability the outcome of

the trial would have been different had counsel introduced Thornton's self-serving

---

[8] Throughout this order, in looking through the appellate court's per curiam
affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate
court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

21

statement, cross-examined the witnesses more thoroughly on this issue, or presented evidence that Thornton owned the car with the broken window. Based on the foregoing, relief on the claim in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Thornton asserts that his trial counsel was ineffective for failing to call his girlfriend, Freeman, as a witness. Petition at 14. Thornton asserts that had counsel called Freeman, she would have testified that she observed Benn break the window of Thornton's car with the knife officers found in the trashcan of Thornton's apartment, that Benn dropped the knife and fled after breaking the window, and that Freeman picked up the knife and placed it in her trashcan for safety reasons. Id.

Thornton raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. J at 5-6. In denying this claim, the circuit court wrote:

> Initially, this Court notes Ms. Freeman could not testify she was present with Defendant while the incident occurred, but that Defendant also had an alibi to the offenses. These two arguments are inherently inconsistent with one another and Defendant may not prevail on both of them. Assuming *arguendo* Defendant seeks to argue Ms. Freeman would have offered him a defense that he did not commit the offenses but was present at the scene, this Court finds the record refutes assertions that counsel was ineffective. The record shows counsel was fully aware of Ms. Freeman and the evidence she could provide at trial. The State's Discovery Exhibit, provided to counsel, listed Ms. Freeman as a Category A witness. Counsel's own Disclosure to Prosecution listed Ms. Freeman as a potential witness. Counsel's two Motions *in Limine* sought to exclude incriminating evidence against Defendant which Ms. Freeman provided to law enforcement. Counsel's First Motion *in Limine* sought to exclude incriminating evidence against Defendant which Ms. Freeman provided to law enforcement. Counsel's First Motion *in Limine* explicitly stated counsel would not be presenting Ms. Freeman as a witness during trial. During trial, the judge discussed the redaction of statements from a taped interview, and how Ms.

Freeman "the girlfriend, who never was going to testify" would have provided impeachment testimony if she testified.

As such, the record shows counsel had investigated Ms. Freeman, reviewed the evidence she could provide, sought to exclude her statements, and ultimately determined to not use her as a witness at trial. Accordingly, this Court finds Defendant has failed to establish counsel rendered deficient performance as alleged by Defendant. Ground Two is denied.

Id. at 35-36. (record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. M; N.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. Counsel's filing of a motion in limine to prevent the State from introducing prejudicial comments Freeman made to police at the time of the investigation demonstrates that counsel investigated Freeman as a witness. Resp. Ex. A at 86-87. Notably, the circuit court commented that Freeman's statement in the recorded video would have been impeachment. Resp. Ex. B at 243. Even assuming Freeman testified as Thornton claims she would, it would have opened the door to these prejudicial comments. Accordingly, counsel's decision not to call her as a witness

was not deficient. Moreover, Thornton claims Freeman would have testified that Benn broke the window, cut himself on the shards of glass, and then <u>fled</u>. However, three officers dispatched to the scene testified that Benn was present at the scene bleeding. <u>Id.</u> at 55, 61-62, 99-100. Therefore, the record refutes any assertion that Benn fled the scene after breaking the window. Notably, one of the responding officers who took photos of the victim's injury testified that based on his training and experience Benn's injury was consistent with a knife wound. <u>Id.</u> at 99-103. Likewise, the doctor who treated Benn's injury testified that Benn's wound was not similar to car accident wounds where glass shatters and cuts someone, similar to what would have occurred under Thornton's theory of the facts. <u>Id.</u> at 122-23. Based on this evidence that is inconsistent with facts Thornton asserts Freeman would have testified to, the Court finds there is no reasonable probability the outcome of the trial would have been different had counsel called Freeman as a witness. As Thornton has failed to demonstrate deficient performance or prejudice, relief on his claim in Ground Three is due to be denied.

### D. Ground Four

Thornton argues that his trial counsel was ineffective for failing to object to the jury instructions read for count three. Petition at 16-17. Specifically, he contends that the State only charged him with actual possession of a firearm by a convicted felon and, therefore, the jury should not have been instructed on constructive possession. <u>Id.</u> He contends that the jury determined he did not actually possess a firearm as to count three, and thus, maintains that he was convicted of a uncharged crime. <u>Id.</u>

Thornton raised a similar claim in his Rule 3.850 Motion. Resp. Ex. J at 7-9. The circuit court denied the claim, stating:

The charging information indicates the State charged Defendant with Possession of a Firearm By a Convicted Felon, in violation of section 790.23(1)(a), Florida Statutes. Said statute relevantly reads:

> (1) It is unlawful for any person to own or to have in his or her **care, custody, possession, or control** any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device, if that person has been:
>
> (a) Convicted of a felony in the courts of this state.

§ 790.23(1)(a), Fla. Stat. (2009) (emphasis added). As such, this Court finds the charging information did not limit Defendant's possession of the firearm to only actual possession.

Initially, this Court notes Defendant's Arrest and Booking Report indicates he resided at the apartment where the incident occurred. The record further shows the jury received instruction on "constructive possession" as well as "actual possession." With its verdict, the jury found Defendant constructively possessed the firearm. Indeed, upon review, this Court finds the instructions the jury received were the standard jury instructions for Possession of a Firearm By a Convicted Felon. [S]ee Fla. Std. Jury Instr. (Crim.) 10.15 (2010). Counsel was not ineffective for failing to object to standard jury instructions. See Rodriguez v. State, 919 So. 2d 1252, 1272 (Fla. 2005) (quoting Thompson v. State, 759 So. 2d 650, 665 (Fla. 2000)) (holding "'trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient'"). Moreover, the parties and the trial judge discussed this matter at length during the charge conference as to Count Three. In light of the record before it, this Court finds counsel cannot be deemed ineffective. This Court also adopts it reasoning *infra* denying Ground Seven. Accordingly, Ground Three is denied.

Id. at 36-37. (record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. M; N.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim here is meritless. Here, in count three of the Information, the State charged Thornton as follows:

> LOUIS CHRISTOPHER THORNTON on January 19, 2010, in the County of Duval and the State of Florida, did actually possess a firearm, to-wit: firearm, having been convicted of a felony in the courts of the State of Florida, to-wit: Sale or Delivery of Cocaine, the Circuit Court, in and for the Fourth Judicial Circuit of Florida, on September 12, 2003, contrary to the provisions of Sections 790.23(1)(a) and 775.087(2)(a)(1), Florida Statutes.

Resp. Ex. A at 13. The First DCA has recently held that a similarly worded charging document does not preclude a conviction for either actual or constructive possession. See Birch v. State, 248 So. 3d 1213, 1217-18 (Fla. 1st DCA 2018). Moreover, the Information here cited to the relevant statue regarding possession of a firearm by a convicted felon, Resp. Ex. A at 13, a statute that has been interpreted under Florida law as meaning actual or constructive possession. See Birch, 248 So. 3d at 1217. As such, the Information was not defective and properly charged Thornton with both actual and constructive possession. See State v. Burnette, 881 So. 2d 693, 695 (Fla. 1st DCA 2004)

(noting that "the failure to include an essential element of a crime does not necessarily render an indictment fundamentally defective when the indictment references a specific section of the criminal code which sufficiently details all the elements of the offense."). Accordingly, there would have been no basis for counsel to object and counsel cannot be deemed defective for failing to raise a meritless objection. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). As such, Thornton is not entitled to relief on the basis of the claim raised in Ground Four.

### E. Ground Five

Thornton maintains that his trial counsel was ineffective for failing to adequately cross-examine and impeach the victim, Benn. Petition at 18. According to Thornton, Benn told police at the time of the incident, as reflected in the arrest and booking report, that Thornton cut him with a black-handled kitchen knife. Id. However, at trial, Benn testified that Thornton cut him with a blue-handled pocketknife. Id. Thornton maintains that counsel should have impeached Benn with his statement to police. Id.

Thornton raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. J at 9-10. In rejecting this claim, the circuit court explained:

> [T]his Court finds counsel *did* impeach Mr. Benn during cross-examination, albeit on different grounds than those alleged by Defendant. The record shows counsel impeached Mr. Benn with his prior, sworn deposition testimony regarding the amount of time that had passed since Ms. Lester loaned Ms. Freeman $1,000, and the incident at issue. Mr. Benn testified during his deposition two to three months had gone by, but he testified during trial only one month had passed.

This line of questioning served to discredit and cast doubt on Mr. Benn's testimony, the same directive and purpose as impeachment of Mr. Benn about the color of the knife Defendant used. Since counsel did impeach Mr. Benn, Defendant has failed to establish the outcome of his trial would have been different had counsel impeached Mr. Benn on the additional grounds asserted.

Moreover, the record indicates counsel questioned Officer Kahre, who responded to the crime scene and spoke with Mr. Benn. Counsel asked Officer Kahre whether Mr. Benn had given him a description of the knife Defendant had used to cut him: whether the knife was blue, whether it was a folding knife, whether it was a switchblade knife. Officer Kahre indicated he did not recall if Mr. Benn had described the knife to him. Counsel further asked Officer Kahre if this information would have been written in the Arrest and Booking Report, and Officer Kahre stated it would have been, had Mr. Benn described the knife. This questioning served to cast doubt on Mr. Benn's description of the knife, the same purpose as impeachment of Mr. Benn about this issue would have. Based on the foregoing, this Court finds Defendant has failed to fulfill the requirements of Strickland, such that the outcome of his trial would have been different had counsel impeached Mr. Benn as alleged. Accordingly, Defendant is not entitled to relief and Ground Four is denied.

Id. at 37-39 (emphasis in original and record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. M; N.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Five is without merit because Thornton can not demonstrate prejudice under Strickland. The record reflects that Benn testified at trial that Thornton used a "fold-up" knife, which he described as "dark blue, almost black." Resp. Ex. B at 33. Notably, Benn stated Thornton had the handle covered and he only saw the knife "when he turned and slashed me." Id. Based on these facts, any value to impeaching Benn with his statement to police at the time of the incident would have been minimal given Benn's trial testimony that he did not get a good look at the knife and the color of the handle was dark, nearly black. Moreover, Benn had a laceration on his head that required eight staples. Id. at 121-22. Additionally, officers found a knife in a trash can in the apartment Thornton shared with his girlfriend, which had Benn's blood on the blade. Id. at 211. On this record, there is no reasonable probability the outcome of the trial would have been different had counsel impeached Benn in the manner suggested, as the State presented substantial evidence of Thornton's guilt. In light of the above, relief on the claim in Ground Five is due to be denied.

### F. Ground Six

In Ground Six, Thornton argues that his trial counsel was ineffective for failing to impeach Nicole Lester. Petition at 19. Thornton asserts that counsel should have impeached Lester's trial testimony that she saw Thornton with a gun with the statement she gave to police, memorialized in the arrest and booking report, in which she told police she did not see a gun. Id. According to Thornton, had counsel impeached Lester on this subject, there is a reasonable probability the jury would have disbelieved her entire testimony and he would not have been found guilty. Id.

Thornton raised a similar claim as ground five of his Rule 3.850 Motion. Resp. Ex.

J at 11-12. The circuit court denied this claim, writing:

> This Court . . . further finds Ms. Lester's credibility was impeached during trial. Specifically, Ms. Lester testified she had recently gotten in trouble with the law and had been arrested. Counsel impeached Ms. Lester during cross-examination with her previous inconsistent statements she made during her deposition, about how she and Mr. Benn went to Defendant's home because she and Ms. Freeman "had a lot of laundry to air out." Counsel elicited further inconsistent statements from Ms. Lester about her explanation of how the altercation began at Defendant's home and the events which subsequently transpired, specifically involving the knife and the gun. For example, Ms. Lester testified during her deposition she saw Defendant hand the gun to Ms. Freeman, and this statement contradicted her trial testimony. Most importantly, counsel questioned Ms. Lester about her description of the gun she saw Defendant holding, and Ms. Lester provided only a vague description of it.
>
> Because counsel impeached Ms. Lester, albeit on different grounds than those alleged, counsel's questioning served the same purpose: the jury should not find credence in Ms. Lester's testimony. Defendant has not established his trial would have been different had counsel questioned Ms. Lester as he asserts, especially since the jury found Defendant not guilty of Aggravated Assault with a Firearm (Count Two). Through their verdicts as to Count Two, the jurors did not find Defendant used a firearm during the incident with Mr. Benn. As such, Defendant cannot demonstrate he suffered prejudice as required by <u>Strickland</u>. Ground Five is denied.

<u>Id.</u> at 40-41 (record citation omitted). The First DCA per curiam affirmed the denial of this

claim without a written opinion. Resp. Exs. M; N.

To the extent that the First DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, this claim is unavailing. Thornton's claim of prejudice under <u>Strickland</u> is speculative because impeaching a person on one fact does not necessarily mean a jury would find everything that witness said lacked credibility. Moreover, the jury acquitted Thornton on count two, the offense for which the State alleged Thornton used a firearm, and the jury found Thornton did not actually possess a firearm as to count three; instead, relying on constructive possession. As such, is appears the jury concluded Benn and Lester's testimony concerning the gun was not credible; therefore, any impeachment on matters of the gun would not have had a reasonable probability of changing the outcome of the trial. Accordingly, as Thornton has failed to demonstrate prejudice, the relief he seeks in Ground Six is due to be denied.

### G. Ground Seven

Thornton also contends that his counsel was ineffective for failing to object to his HFO sentencing, as Thornton maintains that he does not qualify as such. Petition at 20-21. One of the two convictions the State relied on in establishing Thornton's HFO status was a conviction for driving with a license suspended or revoked (DWLSR conviction), which Thornton asserts is a misdemeanor conviction, not a felony. <u>Id.</u> at 20. Thornton acknowledges that his previous DWLSR conviction resulted in him be designated a habitual traffic offender at the time, which would have made this conviction a felony, not

a misdemeanor. Id. However, he contends that his adjudication as a habitual traffic

offender was wrong as well because he did not have the necessary convictions to qualify

for this status either. Id. at 20-21. According to Thornton, had counsel objected to the use

of the DWLSR conviction, he would not have been adjudicated as an HFO. Id.

Thornton raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. J

at 12-15. In denying this claim, the circuit court ruled:

> The record indicates, in classifying Defendant as an
> HFO, the State relied on his previous convictions for
> Possession of Cocaine on August 10, 2009, and Driving While
> License Suspended or Revoked-Habitual Offender on
> December 11, 2008. During Defendant's sentencing hearing,
> the State filed certified copies of said convictions, neither
> which have been overturned or vacated. The certified copy of
> Defendant's conviction for Driving While License Suspended
> or Revoked - Habitual Offender lists said offense as a third-
> degree felony. Indeed, as discussed *supra*, said offense is a
> third-degree felony.
>
> Further, the record shows Defendant did not object to
> his conviction for Driving While License Suspended or
> Revoked - Habitual Offender; he testified under oath the
> conviction was his, it was a felony, and it had not been set
> aside or vacated. The record further shows Defendant
> committed the instant offenses on January 19, 2010, well
> within five years of the date of his most recent prior felony
> conviction on August 10, 2009. As such, this Court finds the
> documentation provided by the State during Defendant's
> sentencing hearing shows Defendant was lawfully sentenced
> as an HFO. Therefore, counsel was not ineffective for failing
> to object because any objection on the basis now suggested
> by Defendant would have been without merit and overruled.
> See Willacy v. State, 967 So. 2d 131, 140 (Fla. 2007) (citation
> omitted) (finding "counsel is not ineffective for failing to make
> a futile objection"). Additionally, this Court notes the State
> outlined Defendant's extensive criminal history in great detail
> during the sentencing hearing, which includes seven felony
> convictions.
>
> Moreover, with the instant argument attempting to
> demonstrate his conviction for Driving While License

Suspended or Revoked - Habitual Offender is not a qualifying prior felony, this Court finds Defendant is seeking to overturn said conviction, couched in terms of ineffective assistance of counsel. Indeed, Defendant detailed his belief that said offense is not a felony, as it pertains to his specific factual criminal past, for two pages in his instant Motion. If Defendant seeks to challenge the underlying facts in support of his prior HFO-qualifying conviction, he must challenge said conviction in his previous case number, 2008-CF-16565. He may not do so in the instant case. In sum, because Defendant has failed to establish counsel rendered deficient performance for failing to object to the State's prior felony convictions in support of its HFO notice, Ground Six is denied.

Id. at 41-43 (record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. M; N.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nonetheless, even if the First DCA's adjudication of this claim is not entitled to deference, Thornton cannot demonstrate that habeas relief is warranted on this claim. The record reflects that the State introduced a certified copy of Thornton's conviction for DWLSR. Resp. Ex. A at 134-38. That conviction was listed as a third-degree felony on the certified judgment and sentence form. Id. During the sentencing hearing, Thornton stated to the circuit court, under oath, that he had reviewed the judgment and sentence

for the DWLSR conviction, admitted he had previously been convicted of that crime, and that the conviction had not been vacated and he had not been pardoned. Id. at 160-62. As the DWLSR conviction had not been vacated, counsel had no basis to object to the imposition of an HFO sentence on these grounds. Had counsel put forth the argument Thornton advances in his Petition, the circuit court would have overruled the objection based on the existence of a certified judgment and sentence reflecting a felony conviction and Thornton's own testimony on the matter. Accordingly, counsel cannot be deemed deficient for failing to present a meritless objection. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Therefore, Thornton's claim in Ground Seven is due to be denied.

### H. Ground Eight

Finally, in his last ground, Thornton asserts that his trial counsel was ineffective for failing to request a jury instruction on the standard for constructive possession of a firearm in a jointly occupied premises. Petition at 22-23. For the same reasons Thornton urges in support of his claim in Ground One that the circuit court erred in failing to read this instruction, he now argues his counsel should have requested a jury instruction on this matter. Id.

Thornton raised a similar claim as ground seven of his Rule 3.850 Motion. Resp. Ex. J at 15-17. The circuit court denied this claim, explaining:

> This Court finds that, even had counsel requested such instruction, the outcome of Defendant's trial would not have been different. The evidence presented shows Defendant jointly occupied the apartment with his girlfriend Ms. Freeman and their child, and he shared the master bedroom with Ms. Freeman. Specifically, testimony was presented during trial describing the apartment as "their house" and, on the day of the incident, Mr. Benn and Ms. Lester went "over there" to discuss the $1,000 at issue with Ms. Freeman and Defendant. As discussed *supra* in Ground Three, Defendant's Arrest and

34

Booking Report indicates he lived at the apartment, as demonstrated by his listed address.

Further, Officer Lisa Coyle of JSO testified she responded to the scene first, and Ms. Freeman told her about a firearm inside a box in the master bedroom. Officer William Whittlesey of JSO also responded to the scene, and he located a weapon, specifically a .32 caliber pistol, in the master bedroom next to the bed. Officer Whittlesey also recovered a magazine in the closet belonging to the pistol. Counsel asked Officer Whittlesey and Officer Gray if they could state who placed the firearm in the master bedroom and when it was placed there, and both officers indicated they could not.

As such, as the instruction and corresponding case law demonstrate, even if the firearm was jointly possessed when law enforcement found it, both Defendant and Ms. Freeman were deemed to possess it and have knowledge of it. Indeed, had counsel requested such instruction, an inference would have applied that Defendant had knowledge, dominion, and control over the contraband in the jointly occupied premises. Therefore, Defendant would have still been found in possession of the firearm if counsel had requested such instruction. This Court also adopts its reasoning denying Ground Three *supra* regarding the instructions the jury received as to "possession" of a firearm. Accordingly, because this Court finds Defendant has failed to establish the requirements of <u>Strickland</u>, Ground Seven is denied.

<u>Id.</u> at 43-44 (citations and record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. M; N.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nonetheless, even if the state appellate court's adjudication of this claim is not entitled to deference, this claim is meritless. In Florida, if a defendant cannot demonstrate an error was fundamental on appeal, he or she can likewise not demonstrate prejudice under Strickland. Chandler v. State, 848 So. 2d 1031, 1046 (Fla. 2003). As noted above in the Court's analysis of Ground One, Thornton raised the circuit court's failure to read this same instruction as a claim of fundamental error, but the First DCA found it unavailing. As such, under Florida law, Thornton cannot demonstrate prejudice. See id. Moreover, for the reasons the Court explained above as to Ground One, and which the Court hereby adopts as part of its analysis of Ground Eight, even had this instruction been read, there is no reasonable probability the outcome of the trial would have been different. The State produced sufficient independent proof to establish Thornton's knowledge and control over the firearm. Accordingly, because Thornton cannot demonstrate prejudice, his claim in Ground Eight is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Thornton seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Thornton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Thornton appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of October, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C: Louis Thornton #J23047
Anne Catherine Conley, Esq.